Case 4:21-cv-04230 Document 29 Filed on 01/18/24 in TXSD Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
January 18, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BENJAMIN WOODROW, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-04230 |
| | § | |
| WAL-MART STORES TEXAS, LLC | § | |
| | § | |
| *Defendant.* | § | |

### ORDER

Pending before the Court is Defendant Wal-Mart Stores Texas, LLC's ("Defendant" or "Walmart") Motion for Summary Judgment. (Doc. 11). Plaintiff Benjamin Woodrow ("Plaintiff" or "Woodrow") filed a response (Doc. No. 12), Walmart filed a reply (Doc. No. 13), and Woodrow filed a sur-reply (Doc. No. 14). Additionally, Walmart filed a Motion to Strike (Doc. No. 15), and Woodrow responded (Doc. No. 16). After reviewing the relevant law, summary judgment evidence, and parties' briefings, the Court hereby DENIES Walmart's Motion to Strike (Doc. No. 15) and GRANTS Walmart's Motion for Summary Judgment (Doc. No. 11).

**I.      Background**

This lawsuit arises out of injuries sustained by Plaintiff on November 29, 2019, which was that year's "Black Friday." Plaintiff alleges he struck his head while exiting a Walmart store through the store's shopping car bay door. The Walmart store at issue is Walmart Supercenter #2505 located at 5501 Highway 6, Missouri City, Texas.

Plaintiff entered the store through the front (customer) entrance. (Doc. No. 11-1 at 1). After Plaintiff did not see anything that he wanted to purchase, Plaintiff decided to exit the store. (*Id.*). Plaintiff recalls that "there were people in front of me [at the customer entrance/exit door], so I

opted to exit through the cart bay, since I did not see any carts or other barriers blocking the way and I could see the vehicle I had arrived in through the opening in the cart corral area." (*Id.*). After making this decision *not* to exit through the customer door by which he entered the store, Plaintiff ducked under some rolled up plastic drapes and began his exit via the cart bay. The cart bay was fifty-six inches high (or 4 feet 8 inches) according to Plaintiff's expert. (Doc. No. 12 at 6). Unfortunately, as he was exiting, he resumed standing too early and hit his head on the outer brick structure of the store. Plaintiff alleges he sustained injuries as a result of this incident. (*Id.*).

Some time later, Plaintiff filed the instant lawsuit for premises liability against Defendant in the 458th Judicial District Court of Fort Bend County, and Defendant removed the case to this Court.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary

judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to provide and specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.  Analysis

#### A.  *Evidentiary Objection*

The Court will first address Walmart's evidentiary objection as it may affect the analysis that follows. Walmart objects to the unsworn declaration by Woodrow that is attached to his summary judgment response (Doc. No. 12-1). Walmart argues that the Court should not consider this declaration under the sham affidavit doctrine because in the declaration, Woodrow contradicts his earlier deposition testimony. During his earlier deposition, Woodrow testified that nothing was obstructing his view of the cart bay door. (Doc. No. 11-1 at 12). He testified that he "didn't see that there was no buggies or carts blocking the exit and saw some plastic divider things pulled up." (*Id.*). In his summary judgment declaration, however, Woodrow stated that "the low opening of the outer structure of the building was obstructed from by view by the blower, the garage door, and the rolled-up drapes as I approached the opening." (Doc. No. 12-1, at 1).

"[A] plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation. This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The sham affidavit doctrine prevents a party who has been deposed from introducing

3

an affidavit that contradicts that person's deposition testimony without explanation. *Free v. Wal-Mart La., LLC*, 815 Fed. App'x 765, 766 (5th Cir. 2020) (per curiam).

In response to this objection, Woodrow contends that there is "no contradiction that would require the use of the Sham Affidavit rule." (Doc. No. 16 at 2). His reasoning is that the deposition testimony stated that nothing obstructed his view of the entryway *door*, while his declaration described that the *door* blocked his view of the structure on which he struck his head (which was past the door). In the deposition, Woodrow was only asked in his deposition if there was "anything obstructing your view of the cart corral entryway door." (Doc. No. 11-2). Hence, he maintains that the declaration is not a sham affidavit because he was describing his view of two different structures.

Having examined the declaration and deposition, the Court agrees with Plaintiff that his deposition testimony was limited to whether there were any obstructions to viewing the door itself, to which he answered that there were "some plastic divider things pulled up." These plastic dividers appear to be the same as the "rolled up drapes" described in his summary judgment declaration. This statement in the declaration, therefore, is not necessarily contradictory and the Court will consider it. The Court will also consider Woodrow's statement stating that the "garage door" obstructed his view of the outer structure because his deposition testimony was limited to what obstructed his view of the door. Finally, the Court will also consider Woodrow's statement that the "blower" obstructed his view because in his previous testimony he stated, "As I exited I remember ducking down under the blowers, I believe they are." (Doc. No. 11-2 at 18). Finding no meaningful contradictions between Plaintiff's deposition and affidavit, the Court hereby denies Walmart's Motion to Strike.

B. *Premises Liability*

The parties appear to agree that this is a premises liability claim.[1] Under Texas law, Plaintiff must prove the following elements to establish a premises liability claim: (1) Plaintiff was an invitee; (2) Walmart was a possessor of the premises; (3) a condition of the premises created an unreasonable risk of harm to Plaintiff; (4) Walmart knew or reasonably should have known of the condition; (5) Walmart failed to exercise ordinary care to protect the invitee from danger; and (6) Walmart's failure was a proximate cause of Plaintiff's injury. *Judd v. Braum's. Inc.*, 2015 WL 11019133 at *2 (N.D. Tex. July 15, 2015) (citing *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009)). There is no dispute that Woodrow was an invitee or that Walmart owned/possessed the premises in question; thus, the first two elements are clearly met. Walmart's motion argues that there is no genuine issue of material fact on the third and fifth elements. Specifically, Walmart argues, first, that the alleged condition did not pose an unreasonable risk of harm and, second, that Walmart did not have a duty to warn because the condition was open and obvious.

1. *Unreasonable Risk of Harm*

As noted, the plaintiff in a premises liability case must establish that the premises owner knew or should have known of a dangerous condition on the premises that presented an unreasonable risk of harm. *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970). The duty a premises owner owes to its invitees is not that of an insurer. *CMH Homes, Inc. v.*

---

[1] In addition to moving for summary judgment on Plaintiff's premises liability claim, Walmart also moved for summary judgment to the extent that Plaintiff's claims were grounded in ordinary negligence and/or respondeat superior. (Doc. No 11). Plaintiff did not address or otherwise respond to Walmart's ordinary negligence and respondeat superior arguments in his response; instead, Plaintiff treated his claims solely as claims grounded in premises liability. *See* (Doc. No. 12 at 3). Thus, this Court grants Walmart's motion on those two grounds as Plaintiff's failure to contest these issues is a waiver of these claims. *See Gray v. White*, 18 F.4th 463, 469 (5th Cir. 2021). As a consequence, the Court in this opinion addresses solely the one cause of action that Plaintiff contested: that based upon premises liability.

*Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). That is to say, a condition is not unreasonably dangerous simply because someone gets hurt. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 410 (Tex. 2006). A condition is unreasonably dangerous if it presents an unreasonable risk of harm, meaning that there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck*, 451 S.W.2d at 754; *see also Brinson Ford, Inc v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (holding the trial court properly granted summary judgment in favor of the premises owner when the evidence showed no one had been injured by the condition in question, and the premises owner had received no complaints about the condition in question during a ten-year period).

Walmart contends as a matter of law that the shopping cart bay door does not pose an unreasonable risk of harm. Walmart submitted a photograph depicting the area including the shopping carts, the shopping cart bay door, and plastic drapes. Walmart argues that "the area is for shopping carts, and Walmart could not foresee that a customer would attempt to walk through it." (Doc. No. 11 at 7). In fact, Plaintiff confirmed that he had been to Walmart in the past and entered through the regular customer door on that visit, and that he had entered through the regular door on this visit as well. (Doc. No. 11-1 at 15). Finally, Walmart contends that there is no evidence of any prior complaints about the shopping cart bay door or of any similar incidents occurring. (Doc. No. 11 at 7).

In response, Plaintiff contends that Walmart's photograph does not accurately depict the way the shopping cart bay door area appeared when Plaintiff exited through it. Plaintiff presents his own photographs, which show the plastic drapes rolled up "in such a way that there was a clear opening from the cart bay to the outside." (Doc. No. 12 at 5). Additionally, Plaintiff makes a distinction between the shopping cart bay door and the outside structure of the building—while he

6

could see and avoid the low overhang from the bay door, the outer structure was hidden by the bay door and is the harmful condition he claims is at issue here.

Plaintiff also presents an unsworn declaration by his retained expert, Dr. Jerome Congleton, who personally inspected the shopping cart bay door area at several Walmart locations after the incident in question. According to Congleton, the structure opening is fifty-six inches high and there is a twenty-two-inch gap between the bay door and the outer structure of the building. Congleton also states that he observed employees entering and exiting through the cart bay. Based upon this, Plaintiff alleges that the "cart bay was clearly being used as" an entrance/exit, it should have been "safe" in accordance with the International Building Code 2015. (Doc. No. 12 at 6). Congleton stated that "[w]hen a low overhead clearance hazard . . . exists over time, it only waits the exposure of a certain number of persons before a potential injury is likely to occur." (Doc. No. 12-2). Thus, Plaintiff argues that a reasonable person could predict a patron would attempt to exit the building through the cart bay door and strike their head. As such, he argues that Walmart's summary judgment should be denied.

The Court does not agree with Plaintiff's characterization. As an initial matter, the Court is not convinced that photographs taken at *other* Walmart locations *after* the incident are relevant to this matter. Nevertheless, even if Plaintiff's proffered photographs are accurate and relevant, the fact that Walmart employees, who were presumably tasked with moving shopping carts into the store and who were familiar with the area, used the shopping cart bay door as an entry and exit does not make it foreseeable to Walmart that a customer, who was not tasked with retrieving carts, would do the same. These employees appear to be using the shopping cart bay door exactly as it was designed to be used—for retrieving and replenishing the shopping carts.

7

Additionally, the Court does not find Plaintiff's expert's opinions based on alleged building code violations to be relevant. According to Plaintiff, the cited building code—International Building Code 2015—requires that Walmart "provide a continuous and unobstructed egress" through the building. (Doc. No. 12-4, at 11). Congleton's belief that the cart bay should have been taller in accordance with building codes, therefore, presupposes that the cart bay was an entrance or exit. (*Id.*). This belief, however, is not material because Plaintiff has presented no evidence—other than employees' proper use of the cart bay—supporting his contention that the area is used as an entrance or exit to the store. The "clear" entry/exit to the store is, instead, the entry and exit set aside for use by customers—the one through which Plaintiff entered and the one that Plaintiff could have used to exit but did not. Thus, by all evidence, it appears that Walmart did "provide a continuous and unobstructed egress" as required; Plaintiff chose not to use it.

Moreover, Plaintiff has presented no evidence that any other Walmart customer has ever had an injury at this shopping cart bay door area, nor that Walmart has ever received a similar complaint about this area. Considering this context, the Court finds that Plaintiff has failed to raise a genuine issue of material fact showing that there was "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck*, 451 S.W.2d at 754. As noted above, premises owners are *not* insurers of their invitees. Since there is no evidence that this area posed an unreasonable risk of harm, Defendant's motion is granted on this element.

2. *Open and Obvious Condition*

Given the Court's ruling above on the third element of premises liability (whether the condition posed an unreasonable risk of harm), the Court need not consider the fifth (whether Walmart failed to exercise ordinary care to protect the invitee). Nevertheless, after examining

Plaintiff's summary judgment evidence on this element, the Court finds that it would likewise grant Defendant's summary judgment motion on this element as well.

While premises owners generally have a duty to exercise ordinary care to protect invitees, there is no need to protect or warn against open and obvious dangers because "the law presumes that invitees will take reasonable measures to protect themselves against known risks…" *Austin v. Kroger*, 398 S.W.3d at 767; 465 S.W.3d 195 (Tex. 2015). Therefore, when a condition is "open and obvious *or* known to the invitee," the landowner need not warn the invitee of the hazard. *Rivas de Rios v. Wal-Mart Stores Texas, L.L.C.*, No. CV 1:15-217, 2017 WL 1032118, at *3 (S.D. Tex. Feb. 8, 2017), *report and recommendation adopted sub nom. De Rios v. Wal-Mart Stores Texas, L.L.C.*, No. 1:15-CV-217, 2017 WL 1030721 (S.D. Tex. Mar. 14, 2017); *see also Austin*, 465 S.W.3d at 204 ("Since there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee").

Here, *even considering Plaintiff's distinction between the inner door and the outside structure*, the Court finds that this was an open and obvious condition that does not give rise to a duty to protect. Plaintiff admits that there was nothing blocking his view of the cart door except blowers and plastic drapes rolled up. Even with these alleged obstructions, he could see that the opening was low, as evidenced by the fact that he ducked while exited. As Walmart argued, "the shopping cart door carried no such hidden danger." (Doc. No. 13 at 6). The bay door and outside structure were visible to Plaintiff and to all customers. It was also open and obvious that this door was not made for customers to enter and exit the building. Rather than waiting his turn to exit with the other customers using the customer door, Plaintiff made his own decision to use the shopping cart entrance as a human exit. No reasonable retailer has a reason to anticipate Plaintiff's actions and consequently to take actions to warn against such actions. Walmart should not be held liable

9

for the injuries inflicted by the Plaintiff's poor decisions. Accordingly, the Court hereby grants the Defendant's motion on this issue as well.

### IV. Conclusion

Having considered the summary judgment evidence, the relevant law, and briefings by the parties, the Court finds that Plaintiff failed to raise a genuine issue of material fact for each element of his premises liability claim.

Accordingly, the Court hereby **GRANTS** Defendant Walmart's Motion for Summary Judgment in this matter. (Doc. No. 11).

SIGNED at this 18th day of January, 2024.

Andrew S. Hanen
United States District Judge